First case on the afternoon's docket is the people of the state of Illinois v. Tommy Adams. And we have Mr. Lawrence of New York for the appellate. And David Robeson for the appellate. You may begin, Mr. Mayor. May it please the Court, Counselor. My name is Lawrence O'Neill and I represent Tommy Adams in this appeal. This is a direct appeal from Mr. Adams' convictions for aggravated battery with a firearm and unlawful possession of a weapon by a felon following a jury trial. In brief, the evidence of trial showed that Mr. Adams had shot Dennis Belcher inside Belcher's home. Belcher did not testify at the trial. No witness saw the actual shooting. The defense's case was based upon Mr. Adams' post-arrest statement in which he claimed that he went to Belcher's that night to return Belcher's gun that Belcher had left with him and to buy cocaine. Mr. Adams claimed that the gun accidentally discharged when he tried to return it to Belcher in a scuffling back and forth that the gun occurred. In light of the State's concessions in Arguments 2, 3, and 4, I will limit my presentation to Argument 1, in which I ask this Court to reverse Mr. Adams' convictions and remand the case for a new trial because it received ineffective assistance of counsel. I set forth four ways in which counsel provided ineffective representation. Counsel's first error occurred before trial where he failed to move to sever the aggravated battery with a firearm charge from the unlawful possession of a weapons charge. There was no sound strategic purpose for counsel not to sever these charges. And because the charges were not severed, Mr. Adams suffered undue prejudice on the more serious aggravated battery with the firearm charge because the jury unnecessarily learned that he was a convicted felon, which they would not otherwise have known. Mr. O'Neill, let me ask you this. Yes, Your Honor. The State has essentially conceded that a crinkle hearing is required, so given that fact, wouldn't it be most prudent for us to remand it and let the record be more fully developed at a crinkle hearing? Your Honor, the record supports Mr. Adams' claims of ineffective assistance of counsel in these four instances that are presented in the brief. And he has a right to have this Court decide whether he received ineffective assistance of counsel in these matters, and if he prevailed, his convictions would be reversed and he would receive a new trial. The crinkle issue is a separate matter, and frankly, if this Court finds that counsel was ineffective on these four instances here, then the crinkle issue would be moved. So I submit to this Court that it would be appropriate to rule on the ineffective assistance of counsel claims, and if Your Honors did not find that counsel was ineffective on those claims, certainly then the proper remedy would be to remand it for a crinkle hearing. But the record supports ineffective assistance of counsel claims here and entitles Mr. Adams to a new trial. Regarding the counsel's failure to settle the charges, it cannot be said with confidence that the jury on the aggravated battery with the firearm charge was not affected by their knowledge that Mr. Adams was a convicted felon. The issue before the jury was whether to believe Mr. Adams' claim that he accidentally discharged the weapon. Mr. Adams' credibility was a crucial fact in this case. It is credibility or the way the jury looked at Mr. Adams was seriously affected by their knowledge that he was a convicted felon. The jury, it was reasonable to conclude, and there's a reasonable probability that the jury was influenced by Mr. Adams' status as a convicted felon and used that against him in deliberating on the aggravated battery charge, and they had believed that he deserved punishment simply because he's a bad person who was a convicted felon. So there's no objective reason for counsel not to move to sever the charges, and it was substantially prejudicial, and case law that looks at this question indicates that it is virtually required to sever the charges in this situation and that counsel was ineffective for failing to do so. Again, in this case, again, the jury repeatedly heard of Mr. Adams' prior felony conviction, an opening statement. Professor's opening statement in the stipulation in the closing argument by the prosecutor, which was emphasized. So in all, the record supports the finding that the jury, a reasonable probability that the jury was affected by Mr. Adams' status as a convicted felon and that he received ineffective assistance of counsel in that regard. The second instance of counsel's ineffective assistance involved his failure to object to hearsay evidence. Again, Mr. Adams' defense was that he went to Belcher's house that night to return a gun and got in an exchange with the gun and the gun accidentally discharged. To rebut this, the state argued that Mr. Adams was angry at Belcher over money and then went to Belcher's house with the intention to shoot him. As such, the state presented the testimony of Belcher's girlfriend, Serena Gibbs, who testified that shortly before the shooting, she overheard a telephone conversation between Mr. Adams and Belcher in which Mr. Adams asked Belcher to borrow $100 and Belcher told him no. Counsel did not object to this, even though it was offered to support the state's argument that Mr. Adams was angry with Belcher and shot him intentionally. Counsel's failure to object to this was, there was no strategic purpose not to object to this hearsay testimony and this hearsay testimony was prejudicial because it was inconsistent with Mr. Adams' defense that he went to Belcher's house to return a gun and accidentally shot him and this evidence actually cooperated and reinforced the state's theory of the case that Mr. Adams was mad at Belcher and went over to Belcher's house and shot him. In other words, Belcher was mad at him for going over to Belcher's house to return a gun, and Belcher was mad at him for not going there with the intention to shoot him. In other words, Belcher was mad at him for wanting to borrow money from Belcher shortly before the shooting and Thompson testified that Gibbs told her that she overheard Mr. Adams say that something about $100. It was, according to Officer Thompson, Gibbs gave her a contradictory statement to what she testified to on the stand. On the stand she said, I heard him say he borrowed $100, but what the officer said was she told her that part of it was inaudible, she heard $100. And so isn't it kind of legitimate for counsel to call the officer to contradict what Gibbs said during the state's case in chief? Your Honor, I think it was a blunder because Gibbs had testified earlier. Maybe you should have objected to begin with, but now we're talking about this testimony. Once it was in, isn't there kind of an explanation for why he would want to say she told a different story early on? Well, I see what you're saying, Your Honor, but I think that there was an unreasonable strategy and a reasonable decision on counsel's part because it reinforced, I mean it corroborated in a sense by Gibbs' statement to Thompson. That she heard something. Yeah, you're right, correct. She did say she heard something about $100, so I think that it's a greater error and a greater prejudice than Mr. Thompson to bring that out again through the testimony of Officer Thompson because it reinforced or corroborated Gibbs' testimony about that. I think it was an unreasonable decision by counsel that that was his decision. You decided, I mean how you would explain would be whether he, that was a legitimate purpose for counsel to ask Thompson that question, but I think that that was an unreasonable decision and it just reinforced the state's argument and corroborated Gibbs' testimony. So I think that was a, I think that was professionally deficient representation and it was prejudicial. And then the final error involved counsel's failure to request a lesser included instruction of reckless conduct. Reckless conduct is a lesser included offense of aggravated battery. And depending on the circumstances, thank you, Your Honors. Thank you, Mr. O'Neill. You'll have opportunity to rebut. Mr. Rodman. May I please have the court? Counsel Robinson. This case is about trial strategy. The justices on this panel, Mr. Glorf, understand trial strategy. You've all been trial attorneys at one point in your career. This case is about trial strategy and it will be apparent when we walk through each of the allegations that the defense makes regarding ineffective assistance of counsel. I want to start, because of Your Honors' last question, with the third argument, which is the alleged impropriety in recalling Detective Gibbs regarding, or Officer Gibbs, regarding what was said. The reason that defense counsel did that was it flowed into the defense theory of the case. You have to take a step back and look for a moment at what the defendant was facing in this case. We have to presume, because there's nothing in the record to contradict it, and part of that goes to Justice Moore's inquiry about the Krinkle hearing, which I'll touch on in a minute. But what the defendant was facing here, and we have to presume that he wanted to pursue a jury trial. He exercised that right in this case. We're faced with a situation where the defendant was there with the victim. They were engaged in altercation over a drug deal, or there's some implication about drugs being exchanged or their history with guns and the reason why the defendant had this weapon in the first place. The reason this is so important is defense counsel is now faced with a situation where he now has to explain why they were fighting. Because it's not his constitutional obligation to do that, but as former litigators, you all know that juries have that expectation. The defendant had already provided an explanation that he couldn't get out of in his so-called confession. That's correct. So defense counsel didn't have to give an explanation. The explanation was there, and it was going to go into evidence. It was, Your Honor, but part of what the defense had to do was ferret out and put together what that confession – how that confession explained what actually happened there. Because what the defense was trying to bring out in asking these questions was that there's some inconsistency. Why were they fighting? His explanation was that we were in an altercation and the gun accidentally went off. It wasn't the motive. Well, in the confession, he said he was trying to return the gun and he wouldn't take it back. Correct.  There was, but my point is, and that's why I'm sort of – And what I'm trying to get – my question is going to be how does allowing this hearsay statement that's inconsistent with that explanation that defense counsel has already stuck with, how does that promote his explaining why they were fighting or what the motive was or anything like that? Because as defense counsel argued routinely below, what they were trying to say was that the state, that the investigators had concocted a story with the girlfriend, right, because the victim didn't testify, that they concocted the story to explain why, in fact, it's the opposite of what defendants sort of argue on appeal, which is, hey, that showed motive for the victim to be upset about it – I'm sorry, for the defendant to be upset about it. Instead, what I think defense counsel was hoping – now, we might have all done it differently if we were there, but I think what defense was hoping was that it would demonstrate to the jury that he was upset with the defendant, that, in fact, the victim was there and initiated this altercation because they had this history of drug deals. He got them up in the middle of the night and that this was problematic. I think defense counsel's position here was, look, we're facing a situation where – and this goes back to their first allegation about failure to sever. We're facing a situation where the evidence that does come in is going to show that my defendant or that my client is messing around with drugs, messing around with guns, is laying down dogs and getting fleas, for lack of a better phrase. And so I think what defense counsel is trying to do here is on that point explain to the jury, look, there was more going on here. What it didn't want to leave open was just this statement that was, frankly, somewhat unbelievable, that he just showed up with the gun and that they were friends and then somehow trying to give it back to him. There was a struggle and three or four shots went off. It's, frankly, unbelievable. I'm not saying it was a great plan. Right. Okay. And I'm sure you're not either. However, how does failing to sever the gun charge, which would have prevented the jury from knowing he was a convicted felon, fall into this trial strategy? That's an excellent point, Your Honor, because, quite frankly, in reviewing this, I think it's a fairly good strategy if – and this goes back to the Crankville inquiry – if, in fact, the defendant wanted to pursue a trial at all costs, we have to presume that defense counsel acted appropriately. And in doing that, defense counsel would have had the conversation with the defendant. Here are these other lesser-included offenses. Do you want to pursue one of those? Because there are – Is there anything in the record that – There's not – – there was ever even thought about, discussed, anything? There's not, but there's a legal presumption that actually cuts against the state in this regard. And that's why I think conceding on the Crankville issue is so vital, Your Honor. There's five fundamentals under Ramey from the Supreme Court for a defendant, as this Court knows. Whether to proceed pro se, whether to pursue a bench trial, whether to testify, whether to appeal. And most recently, the newest addition is whether there should be an instruction on the lesser-included offense. So the defendant is entitled to have the discussion and ultimately decide whether a lesser-included offense instruction is presented. Here, counsel didn't request that. And I would posit, at least at this stage right now, there is a logical reason for that. He was charged with unlawful possession and aggravated battery with a firearm. The first thing that we need to understand is the idea that the jury was presented with the fact that he's a convicted felon is somehow going to dirty this guy up, given the circumstances in this case, is frankly risible. Two, this is a strategy if we presume what we have to presume, which is that counsel acted appropriately and the defendant made the appropriate determinations privately with his counsel. It was an all-or-nothing, classic all-or-nothing defense. In other words, if the jury, if he proves up the lesser-included offense and the jury believes that, but they're not given that instruction, he can argue, which is what he did, look, he's guilty of a lot of things. But he's not guilty of aggravated battery with a firearm because he doesn't meet the elements of the offense. It's a classic strategy. You, in fact, prove a lesser-included offense but don't give an instruction in hopes that the jury will believe your version of events and say, well, he might be guilty of that, but there's no instruction on that. How does having the firearm charge in there help in that all-or-nothing defense? It does because ultimately if he's acquitted of the unlawful, of the aggravated battery with the firearm charge, he cannot be then retried on the possession charge, double jeopardy attachment charge. When you say all-or-nothing, you really think the jury was going to acquit him on the possession charge? I don't think so, but that only cuts against the defendant because he was so guilty. One question. This defendant asked for 357 days credit. Do you concede that point? It is a reply brief. I'll answer the question first. No, but it's more nuanced than that. I'm prepared to concede on that point, but when I had the record, it was unclear what the dates were. Defense counsel didn't provide the dates. He provided the dates in the reply brief and represented that we conceded that point. We don't. I would concede it if the record supports it. The dates that he provides, in fact, show the dates that he was taken into custody and then the date that he was sentenced. My recollection of the record was that I didn't see anything in there that reflected one way or the other whether he was ever out on bond for any time or not. I don't know. I'm prepared to concede that if the record reflects that. So as sort of a final matter, I wanted to address one issue related to the Crankle issue. This is true, in fact, that if we do send it back on the Crankle issue, some of this will be ferried out up to and including whether he had any discussion with counsel about a lesser-included offense. Maybe he did and maybe he rejected that, and counsel, if necessary, could testify to that effect. And, in fact, in that regard, if Your Honor's concerns are dissuaged, a defendant always has the avenue of a post-conviction appeal petition where he can call counsel at a third stage and ask, What was your strategy and why did you undertake this strategy? Are there no other questions? Thank you. Thank you, Mr. Rafferty. Mr. O'Neill? Counsel, obviously we look at these cases, whether counsel's strategy was reasonable and sound under the circumstances. Opposing counsel suggested that the defense counsel allow testimony from Gibbs and then call Officer Thompson to the stand to reinforce that, to show that the prosecutor and the girlfriend are somewhat concocted a story. I think that if that was what counsel was thinking, if that was his strategy, then that is objectively unreasonable and is deficient performance, and it does not amount to any kind of effective, sound trial strategy. In regards to the lesser-included instruction of the failure of counsel to tender the lesser-included instruction on reckless conduct, there is nothing in the record that suggests that counsel and Mr. Adams discussed that matter. And regarding whether it was a reasonable strategy to go for an all-or-nothing outright equivalent in this case, I would submit to this Court that that was, I mean, the facts of this case, in some cases, obviously, I mean, it could be a reasonable, sound, strategic decision. But under the effects of this case, that is not the case. This was not a – this was a reckless act of shoving a gun back and forth at a penitentiary. That is not an accident when a gun goes off in that situation. Shoving a loaded gun back and forth is a reckless act, and there's a reasonable probability that had counsel requested that instruction, that the jury would have returned a conviction on it. And that lesser-included offense, which would be a Class A misdemeanor with a prison sentence of no less than one year in jail, and Mr. Adams was convicted of a more serious Class X aggravated battery with a firearm in which he received a 50-year extended term sentence. So there's no reasonable trial strategy justifies counsel's decision to go for an all-or-nothing verdict in this case. Are there any other questions, Your Honors? No. Thank you, Mr. O'Neill. Thank you. Thank you, Mr. Robinson. We'll take the matter as advised by Commendable Williams and recourse.